RONALDO A. COULTER
Idaho Employment Law Solutions
Attorney at Law
P.O. Box 1833
Eagle, Idaho 83616
Telephone: (208) 672-6112
Facsimile: (208) 672-6114
Idaho State Bar No.3850
ron@idahoels.com

*Attorney for Plaintiff*

## THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| **LOLETTIMA JOHNSON,** ) | |
| ) | **Case No.** |
| **Plaintiff** ) | |
| ) | _____ |
| ) | |
| **vs.** ) | |
| ) | |
| **ST. LUKE'S REGIONAL MEDICAL** ) | **COMPLAINT AND DEMAND FOR** |
| **CENTER  LTD,[1] and JOHN AND** ) | **JURY TRIAL** |
| **JANE DOEs** ) | |
| ) | |
| **Defendants** ) | |
| ) | |
| _____ ) | |

### I.  COMPLAINT

Comes now Plaintiff, Lolettima Johnson, by and through her counsel of record, Ronaldo A.

Coulter of the law firm of Idaho Employment Law Solutions, PLLC, and for causes of action

against the above named Defendants complains and alleges as follows:

---

[1] Where Defendant is used in the singular it refers to St. Luke's Regional Medical Center LTD. Any other Defendant will referred to as Defendant then First Name and Last Name.

## II.  STATEMENT OF DISCRIMINATION

The Defendant  has through its agents unlawfully discriminated against Plaintiff. This discrimination was based on Plaintiff's gender, female and that Defendant denied Plaintiff the opportunity to enjoy the terms, conditions, and privileges of an employee when she was employed as a Pharmacist, Inpatient Pharmacy at Defendant St. Luke's downtown, Boise, Idaho location in violation of 42 U.S.C. § 2000e et seq., Title VII of the Civil Rights Act of 1964 as amended which is incorporated by reference in I.C. §§ 67-5901 and 67-5909 (1). Plaintiff, not only experienced deliberate and intentional unlawful discrimination in regard to the terms, conditions and privileges of employment because of her race and gender from Defendant, but Plaintiff also was unlawfully terminated from her position as a Pharmacist, Inpatient Pharmacy at Defendant's downtown, Boise, Idaho location.

## III.  PARTIES

1.       Lolettima Johnson ("Plaintiff" or "Ms. Johnson"), is a former employee of Defendant. Plaintiff was hired as a Pharmacist by Defendant in February, 2016. Plaintiff held the latter position until her termination on June 20, 2016.

2.       On information and belief, St. Luke's Regional Medical Center, LTD is a corporation in good standing in the State of Idaho registered with identification number C3925. Idaho Secretary of State Records show that the corporate filing was made on December 27, 1996, and that the corporate headquarters are located at 190 E. Bannock, Boise, ID 83712.  The current registered agent for service of process is Christine Neuhoff, 815 E. Park Blvd Boise, ID 83712.

.

COMPLAINT AND DEMAND FOR JURY TRIAL                    Page 2 of 21

## IV. JURISDICTION, VENUE, AND EXHAUSTION OF ADMINISTRATIVE REMEDIES

3.       This action is brought to secure relief to remedy discrimination on the basis of race and gender  in regards to the terms, conditions and privileges of employment all in violation 42 U.S.C. § 2000e et seq., Title VII of the Civil Rights Act of 1964 as amended which is incorporated by reference in I.C. §§ 67-5901 and 67-5909 (1).

4.       Plaintiff timely filed her complaint of unlawful discrimination with the Equal Employment Opportunity Commission ("EEOC") on or about December 8, 2016.

5.       Plaintiff requested a Notice of Right to Sue Letter from the EEOC on or about April 16, 2018.

6.       The EEOC issued a 90-day Notice of Right to Sue letter to Plaintiff on April 16, 2018 and Plaintiff received the same on April 20, 2018. Plaintiff has exhausted her administrative remedies pursuant to 42 U.S.C. § 2000e-5 and Idaho Code § 67-5908. Ninety days from April 20, 2018  is Thursday,  July 19, 2018.

7.       Pursuant to 42 U.S.C. § 2000e-5(f)(1) and 42 U.S.C. § 2000e-5(f)(3), Plaintiff brings this action in, and jurisdiction is proper in, the United States District Court for the District of Idaho.

8.       Jurisdiction of this court for any pendent or future supplemental claims is authorized by 28 U.S.C. § 1367(a) and Fed. R. Civ. P. 18(a), and arises under the doctrine of pendent jurisdiction as set forth in *United Mine Workers v. Gibbs,* 383 U.S. 715 (1966). *See also DaimlerChrysler Corp. v. Cuno,* 547 U.S. 332 (2006).

9.       Venue is proper in this Court pursuant to 42 U.S.C. § 2000e-5(f)(3).

## V. STATEMENT OF FACTS

**Hostile Work Environment Racial Discrimination.**

10.     Defendant hired Ms. Johnson in February of 2016.

11.     March 9, 2016 at 7:00 a.m. was Ms. Johnson's first training day.

12.     As Ms. Johnson entered the pharmacy department, employees made comments that she (Ms. Johnson) was black.

13.     On the same day, the employees made comments about the shape of Ms. Johnson's body, and how her buttocks looked among other unflattering comments.

14.     Ms. Johnson preferred hairstyle is a "bob"

15.     Ms. Brittany Robinson is a Pharmacy Technician for Defendant.

16.     On or about March 14, 2016 the comments continued. Pharmacy technicians, lead by Ms. Brittany Robinson made unwanted comments about Ms. Johnson's hair to the point where comments were made by the female technicians that black girls should not wear their hair in a "bob" because of the texture of their hair.

17.     Mr. Mitchell Huong was a Pharmacy Intern for Defendant in March of 2016.

18.     Ms. Jessica Monitz, at the time was a Pharmacy Resident for Defendant

19.     Ms. Johnson first met Mr. Huong on or about March 16, 2016.

20.     On or about March 20, 2016, Mr. Mitchell Huong informed Ms. Jessica Monitz that he did not like Black people as he had poor experiences with Black people in the past.

21.     Mr. Brian Dotter serves as the Director of Defendant's Pharmacy (Inpatient) and was Ms. Johnson's direct supervisor. Mr. Brian Dotter is part Asian and Caucasian

22.     Concerned about Mr. Huong's comments and attitude, Ms. Johnson reported Mr. Huong's comments to Mr. Brian Dotter.

COMPLAINT AND DEMAND FOR JURY TRIAL                    Page 4 of 21

23.     Mr. Brian Dotter asked Mr. Mitchell Huong to stay out of the satellite where Ms. Johnson was training. However, at the same time, Mr. Brian Dotter said that Ms. Johnson should feel lucky that she even had a job. Mr. Dotter also said that the only reason Ms. Johnson had a job was because he hired Ms. Johnson.

24.     Mr. John Carr, Ms Wendi Kilzer, Mr. Daniel Scolia, Mr. Mark Gross, and Mr. Zachary Moore were employed as Pharmacy Technicians for the Defendant on or about April 7, 2016.

25.     On or about April 7, 2016, Ms. Johnson received an e-mail from Mr. Brian Dotter requesting that she sign her timecard.

26.     Ms. Johnson had not been shown how to correctly fill out her time card.

27.     Mr. John Carr, Ms Wendi Kilzer, Mr. Daniel Scolia, Mr. Mark Gross, and Mr. Zachary Moore made comments to the effect that Ms. Johnson's not being shown the proper way to complete a timecard was deliberate because Ms. Johnson was Black.

28.     At the time of Ms. Johnson's employment with Defendant, Ms. Alison Chamberlin, and Ms. Kristen Thomas were employed as Pharmacist with Defendant.

29.     On or about April 8, 2016, Ms. Kristen Thomas began making insulting, and demeaning remarks about the way Ms. Johnson spoke and the terminology that Ms. Johnson used.  Ms. Alison Chamberlin stated that Ms. Johnson should quit her job and never come back. Both Ms. Alison Chamberlin and Ms. Kristen Thomas started laughing.

30.     Ms. Alison Chamberlin said that she wanted to have a girl's night out but did not want anyone to mention it to Ms. Johnson. Ms. Kristen Thomas then said, "I get it, exclusion". Ms. Alison Chamberlin replied, "yes". Ms. Kristen Thomas said that she was on board with this exclusion of Ms. Johnson.

COMPLAINT AND DEMAND FOR JURY TRIAL                    Page 5 of 21

31.     Ms. Alison Chamberlin began asking other pharmacists not to talk to Ms. Johnson. Ms. Alison Chamberlin continued in this behavior toward Ms. Johnson through Ms. Johnson's final day.

32.     In April of 2016, Mr. Tyler Osgood was employed by the Defendant as an Overnight Pharmacist.

33.     On or about April 27, 2016, Ms. Johnson began her night shift training.

34.     Mr. Tyler Osgood informed all night shift technicians not to ask Ms. Johnson questions as Ms. Johnson did not know what she was doing.

35.     Mr. Tyler Osgood went further by telling the night shift technicians not to even talk to Ms. Johnson.

36.     In May of 2016, Mr. Tyler Osgood continued this behavior in front of Pharmacy students during a morning meeting.  When later confronted with this behavior, Mr. Tyler Osgood explained that he only treated Ms. Johnson in this insulting manner because he liked Ms. Johnson.

37.     Mr. Tyler Osgood's behavior continued in the same manner toward Ms. Johnson through her termination.

38.     On April 29, 2016, Defendant employed Ms. Andrea Brauer as a Pharmacy resident.

39.     On April 29, 2016, Ms, Andrea Brauer began making uncomplimentary and derogatory comments about Ms. Johnson's hair.

40.     On May 9, 2016, Mr. Brian Tollinger was employed by Defendant as a Pharmacist.

COMPLAINT AND DEMAND FOR JURY TRIAL                    Page 6 of 21

41.     On or about May 9, 2016, at a pharmacy quality service meeting commented that Ms. Johnson's buttocks looked liked those of Ms. Nikki Minaj's who is a Black "rap" artist.

42.     Because of this comment, personnel kept looking at Ms. Johnson's buttocks.

43.     At this same May 9, 2016 meeting, Ms. Johnson was sitting next to Ms. Wendy Force who was employed at the time as a Pharmacist for the Defendant.

44.     At some point, Mr. Brian Dotter informed Ms. Wendy Force that other people in the Pharmacy would not speak to Ms. Johnson because she was Black.

45.     In May of 2016, Mr. Kyle Laffoon was employed by Defendant as a Pharmacy Technician for Defendant

46.     On or about May 26, 2016 Ms. Johnson along with other pharmacy staff attended the regularly scheduled 7:00 a.m. meeting.

47.     Before the May 26, 2016 meeting began, Mr. Kyle Laffoon informed Mr. Brian Dotter  that Ms. Johnson was recording the names of the people to report their behavior.

48.     Mr. Brian Dotter responded by saying that there would not be any repercussions for any behavior as Mr. Brian Dotter was not going to do anything about a complaint that Ms. Johnson made.

49.     Mr. Brian Dotter added that Ms. Johnson could go to Human Resources (HR). Mr. Brian Dotter also stated that if Ms. Johnson went to HR, everyone in the Pharmacy Department would turn on Ms. Johnson and make it seem as though Ms. Johnson was the culprit.

50.      Mr. Brian Dotter then said that he wished he had not hired Ms. Johnson and if he had known that Ms. Johnson was Black that she would not have received an invite for an onsite interview.

COMPLAINT AND DEMAND FOR JURY TRIAL                    Page 7 of 21

51.    Mr. Brian Dotter went on to say that, Ms. Johnson did not fit in because she is Black. Mr. Brian Dotter then added that he only hired Ms. Johnson to help the recruiter that recruited Ms. Johnson.

52.    On the morning of June 1, 2016, Mr. Brian Dotter was sitting in his office with the door open speaking aloud. While speaking, he stated that he could not personally terminate Ms. Johnson's employment with Defendant but that he could get Ms. Johnson fired.

53.    On the morning of June 1, 2016, while walking back to his office, Mr. Brian Dotter stated aloud that he needed to make Ms. Johnson look incompetent even though he was aware of Ms. Johnson's competence in her work.

54.    Mr. Brian Dotter then stated that with Ms. Johnson's termination from Defendant's employ that Ms. Johnson's ass (physically) would be his or words to that effect. Mr. Brian Dotter then added that he just needed to find out where she lived.

55.    During Ms. Johnson's employment with Defendant, Ms. Jessica Bowen was employed as a Pharmacy Operations Manager for Defendant.

56.    Upon hearing Mr. Brian Dotter explain how Ms. Johnson was going to be treated, Ms Jessica Bowen asked Mr. Brian Dotter why he not just help Ms. Johnson.

57.    In response to Ms. Bowen question Mr. Brian Dotter replied that Ms. Johnson should be use to it because Ms. Johnson is/was from Alabama.

**Reporting the Behavior Contributing to the  Hostile Work Environment to the Immediate Supervisor or others.**

58.    On or about March 28, 2016, as previously stated herein. Ms. Johnson reported the behavior to Mr. Brian Dotter.

59.   Ms. Dawn Berheim served as the Senior Director of Defendant's Treasure Valley Pharmacy operations during Ms. Johnson's employment with Defendant

60.   Ms. Melissa Melendez was employed by Defendant  and served in Employee Relations during Ms. Johnson's employment with Defendant.

61.   Ms. Carol Brown served as Director of Human Relations for Defendant during Ms. Johnson's employment with Defendant.

62.   On April 15th and 17th, the behavior of Ms. Alison Chamberlin was also reported to Mr. Brian Dotter.

63.   On May 28, 2016 and June 2, 2016, Ms. Johnson reported the continued technician's behavior to Ms. Dawn Berheim, Ms. Melissa Melendez, and Ms. Carol Brown. Nevertheless, nothing changed and the racial harassment continued.

### Hostile Work Environment Sexual Harassment Gender Discrimination and Pretense for the Unlawful Termination of Ms. Johnson.

64.   March 9, 2016 at 7:00 a.m. was Ms. Johnson's first training day.

65.   On the same day, the employees made comments about the shape of Ms. Johnson's body, and how her buttocks looked among other unflattering comments.

66.    On or about May 9, 2016, at a pharmacy quality service meeting commented that Ms. Johnson's buttocks looked liked those of Ms. Nikki Minaj's who is a Black "rap" artist.

67.   Because of this comment, personnel kept looking at Ms. Johnson's buttocks.

68.   At the time of Ms. Johnson's employment with Defendant, Ms. Teresa Newsome was employed as in inpatient Pharmacist for Defendant.

69.   On or about May 12, 2016, Ms. Johnson was sitting at the computer station across from Mr. Brian Dotter's office.

COMPLAINT AND DEMAND FOR JURY TRIAL                    Page 9 of 21

70.     Ms. Andrea Brauer and Ms. Teresa Newsom both stood behind Ms. Johnson and stared at her while Lolettima Johnson was entering orders.

71.     Ms. Andrea Brauer and Ms. Teresa Newsom began making demeaning comments about Ms. Johnson.

72.     Ms. Teresa Newsom said that she did not understand why several men in the department thought Ms. Johnson was so attractive. Ms. Andrea Brauer said that she just did not understand why men were staring at Ms. Johnson. Ms. Andrea Brauer said that she just didn't get it. What was so special about Ms. Johnson?

73.     During Ms. Johnson's employment with Defendant, Mr. Rob Wills, a Senior Pharmacist, served as the Clinical Manager In Charge of New Hire Training.

74.     During Ms. Johnson's employment with Defendant, Mr. Daniel H (last name unknown), an Idaho State University Student, served as a Pharmacy Intern for Defendant.

75.     During Ms. Johnson's employment with Defendant, Mr. Gregg Slevin was employed as an In Patient Pharmacist for Defendant.

76.     On or about May 26, 2016, after the regular 7:00 a.m. meeting, Mr. Rob Wills suggested that Mr. Brian Dotter say something nice about Ms. Johnson.  Mr. Dotter was aware of Ms. Johnson's presence.

77.     Mr. Daniel H. said that Ms. Johnson had "a calmness" about her and that Ms. Johnson was the only person that spoke to him when he came into the pharmacy.

78.     Mr. Daniel H. then said to Mr. Brian Dotter that he wanted to have a conversation with Ms. Johnson or words to that effect.

COMPLAINT AND DEMAND FOR JURY TRIAL                              Page 10 of 21

79.     Mr. Brian Dotter informed Mr. Daniel H that he could talk to Ms. Johnson. Mr. Brian Dotter then told Mr. Daniel H that he (Daniel H) could get Ms. Johnson to open for him. (meaning Ms. Johnson's vagina).

80.     At that point, Mr. Gregg Slevin, who was also standing next to Brian, said, "Tima's not having sex. She is Religious". Mr. Brian Dotter then said, "She's not? That is good. Tight and wet, that's the best kind. At least you're not humping your butt off and not feeling anything."

81.     On May 31, 2016 prior to the usual 7:00 a.m. meeting and during his usual morning walk through in the pharmacy, Mr. Brian Dotter said aloud that he would see Ms. Johnson's eyes when he is on top of her or words to that effect.

82.     On  morning of  June 1, 2016, Mr. Daniel H and a  Pharmacy Technician whom Ms. Johnson did not know commented on how Ms. Johnson's skin looked like that of Beyonce or Alicia Keys.

83.     On the morning of June 1, 2016, Mr. Brian Dotter was sitting in his office with the door open speaking aloud. While speaking, he stated that he could not personally terminate Ms. Johnson's employment with Defendant but that he could get Ms. Johnson fired.

84.     On the morning of June 1, 2016, while walking back to his office, Mr. Brian Dotter stated aloud that he needed to make Ms. Johnson look incompetent even though he was aware of Ms. Johnson's competence in her work.

85.     Mr. Brian Dotter then stated that with Ms. Johnson's termination from Defendant's employ that Ms. Johnson's ass (physically) would be his or words to that effect. Mr. Brian Dotter then added that he just needed to find out where she lived.

86.     Upon hearing Mr. Brian Dotter explain how Ms. Johnson was going to be treated, Ms Jessica Bowen asked Mr. Brian Dotter why he not just help Ms. Johnson.

87.     In response to Ms. Bowen question Mr. Brian Dotter replied that Ms. Johnson should be use to it because Ms. Johnson is/was from Alabama.

88.     On the morning of June 9, 2016, Mr. Brian Dotter was standing in his doorway. Ms. Johnson was walking about greeting other pharmacists and passing on information from the night shift.

89.     As Ms. Johnson was walking back to her computer, Mr. Brian Dotter in reference to Ms. Johnson stated aloud the following: "she doesn't speak to me that way. She's nice to them and they don't even like her. I should just fire her then she'd be forced to talk to me. I am going to fuck her brains out. You may need to get your back blown out, then you'd change your attitude."

90.     During Ms. Johnson's employment with Defendant, Ms. Cathy Hitt Piechowski was employed as a Pharmacist for Defendant.

91.     On the morning of June 13, 2016, Ms. Johnson was seated at the computer station across from Mr. Brian Dotter's office. Mr. Daniel H entered the pharmacy and Ms. Johnson greeted him. Ms. Johnson then got up and began walking toward Daniel H and simultaneously, Mr. Brian Dotter walked into the pharmacy.

92.     Mr. Brian Dotter greeted both Ms. Johnson and Mr. Daniel H. While Mr. Brian Dotter and Mr. Daniel H were standing together, Mr. Brian Dotter immediately started a conversation with Mr. Daniel H.

93.     Mr. Brian Dotter told Daniel H that Mr. Daniel H could now date Ms. Johnson because his (Mr. Brian Dotter's) chances were ruined.

COMPLAINT AND DEMAND FOR JURY TRIAL                    Page 12 of 21

94.     Mr. Daniel H responded saying "I thought you loved her". Mr. Brian Dotter then said that he does love Ms. Johnson. Mr. Daniel H then said, "I thought you wanted to sleep with her".  Defendant Brian Dotter  responded, I do.

95.     Mr. Brian Dotter then said that Mr. Greg Slevin ruined his chances with Ms. Johnson because Mr. Greg Slevin had informed Ms. Johnson that Mr. Brian Dotter would be rough with Ms. Johnson because he did not love Ms. Johnson.

96.     Mr. Brian Dotter informed Mr. Daniel H that Ms. Johnson was afraid of him now because of what Greg Slevin said. Mr. Brian Dotter then explained to Mr. Daniel H that because Ms. Johnson is a virgin that he would need to be careful with Ms. Johnson.

97.     Ms. Cathy Hitt Piechowski was a witness to part of the previously mentioned June 9, 2016 events.

98.     On June 15, 2016, Mr. Brian Dotter was sitting in his office chair and was looking out the door into the main pharmacy. Mr. Brian Dotter looked at Ms. Johnson and said, "Maybe she is having sex. Maybe I will keep her".

**Adverse Employment Action: Termination Reasons Provided Pretextual**

99.     At the time of Ms. Johnson's employment with Defendant, Mr. Dale Ramsey served as an Inpatient Pharmacist for Defendant.

100.     Ms. Johnson was assigned to work the night shift, which ran from 7:00 p.m. June 13, 2016 through June 14, 2016 at 7:30 a.m.

101.     It is standard protocol for nurses to communicate with the pharmacy whenever the pharmacy needs to adjust or send a medication for a patient. On night shift, the IV pharmacist receives these communications and makes the appropriate adjustments.

102.    That evening, Ms. Johnson received an order for antibiotics from a nurse that was passed to her by Ms. Cathy Hitt Piechowski.  Ms. Cathy Hitt Piechowski received the communication from the nurse indicating that the cultures had been drawn and the antibiotics were needed.  Ms. Cathy Hitt Piechowski neglected to inform Ms. Johnson about the complete communication received from the nurse, which would have alerted Ms. Johnson that the cultures had been drawn.

103.    Ms. Johnson entered a first dose antibiotic to be given; however, Ms. Johnson was not sure in what proximity to the communication being sent by the nurse.   Ms. Johnson passed on the order to Mr. Dale Ramsey. Ms. Johnson explained to Mr. Dale Ramsey that the patient had received an antibiotic but that he would have to schedule and enter subsequent doses of all antibiotics on the order because the patient's labs had not yet been drawn.

104.    On June 15, 2016, Mr. Brian Dotter summoned Ms. Johnson to his office. Mr. Brian Dotter asked that Ms. Jessica Bowen also attend the meeting in Mr. Brian Dotter's office.

105.    At this meeting, Mr. Brian Dotter provided Ms. Johnson the relevant orders regarding the subject antibiotics. The orders provided to Ms. Johnson included the one that Ms. Johnson had not been provided by Ms. Cathy Hitt Piechowski.

106.     Mr. Brian Dotter nevertheless asserted that through Ms. Johnson's actions, a patient had been delayed care. Mr. Brian Dotter informed Ms. Johnson that this alleged error would affect Ms. Johnson's one hundred twenty (120) day evaluation. The alleged error did form the basis of the corrective action form that Ms. Johnson was to receive on June 20, 2016.

107.    After the above meeting, Ms. Johnson returned to her desk.  While at her desk, Ms. Johnson heard Ms. Jessica Bowen inform Mr. Brian Dotter that he had no valid reason to hold the orders against Ms. Johnson.

COMPLAINT AND DEMAND FOR JURY TRIAL                    Page 14 of 21

108.   Ms. Johnson also overheard Ms. Jessica Bowen inform Mr. Brian Dotter that she thought he was trying to get Ms. Johnson fired or words to that effect.

109.   At one point in the overheard discussion, Ms. Jessica Bowen asked Mr. Brian Dotter, why Brian Dotter just could not be friends with Ms. Johnson.

110.    In response to this question, Mr. Brian Dotter replied, "I don't want to be her friend. I want to be her lover."

111.   Mr. Brian Dotter informed Ms. Jessica Bowen that because of the conflict of interest, that he simply could not ask Ms. Johnson out. Mr. Brian Dotter told Ms. Jessica Bowen that Ms. Dawn Berheim had advised him that he was prohibited from dating Ms. Johnson.

112.   On June 20, 2016, Ms. Johnson met with Mr. Brian Dotter and Ms. Jessica Bowen in the conference room. Mr. Brian Dotter terminated Ms .Johnson.

113.   Ms. Johnson was provided with the corrective action form that Ms. Johnson refused to sign, as she did not agree to its content.

114.   As Ms. Johnson was walking toward the exit, Ms. Johnson overheard Ms. Jessica Bowen say to Mr. Brian Dotter that he could ask me now (i.e. meaning Mr. Brian Dotter could now ask Ms. Johnson) out on a date as she was no longer employed by St. Luke's.

115.   Mr. Brian Dotter replied that he was not going to ask Ms. Johnson out or words to that effect. Mr. Brian Dotter informed Ms. Jessica Bowen that he now knew why the other females in the pharmacy were jealous of Ms. Johnson and it was because Ms. Johnson's butt was nice and round.

116.   Mr. Brian Dotter then informed Ms. Jessica Bowen that he might have to do a "drive by". Mr. Brian Dotter explained, "That is what they say" (meaning Black people say that when want to go to someone's house to have sex with them).

COMPLAINT AND DEMAND FOR JURY TRIAL                    Page 15 of 21

**Reporting the Behavior contributing to the Hostile Work Environment to the Immediate Supervisor or others.**

117.     At the time that Ms. Johnson was employed by Defendant, Ms. Desiree Schafer was employed in Employee Relations for Defendant.

118.     On May 20, 2016, Ms. Johnson reported the incidents of harassment Ms. Carol Brown and asked they could meet to discuss.

119.     On June 2, 2016, Ms. Johnson and Ms. Johnson met for lunch and Ms. Johnson explained to Ms. Carol Brown that she was being harassed.

120.     On June 3, 2016, Ms. Johnson met with Ms. Melissa Melendez and reported the sexual harassment to her.

121.     On June 15, 2016, Ms. Johnson e-mailed Ms. Desiree Schafer to set up an appointment to report further on Mr. Brian Dotter's harassment.

122.     On June 15, 2016, Ms. Johnson called Ms. Carol Brown and informed her about the sexual harassment that Ms. Johnson was experiencing from Mr. Brian Dotter. Ms. Johnson told Ms. Carol Brown that Mr. Brian Dotter was determined to terminate Ms. Johnson's employment with Defendant or force Ms. Johnson to voluntarily end her employment with Defendant.

## DAMAGES

123.     Because of the foregoing, Ms. Johnson has suffered in regard to her career and reputation.

124.     Because of the forgoing, Ms. Johnson has suffered severe emotional distress. Ms. Johnson suffered and continues to suffer from bouts of depression and anxiety. Ms. Johnson has

COMPLAINT AND DEMAND FOR JURY TRIAL                                    Page 16 of 21

difficulty sleeping, and she has experienced and continues to experience a deep sense of hopelessness for the future.

125.    As result of the forgoing, Ms. Johnson has also suffered fear, anger, frustration, irritability and has experienced a profound sense of betrayal.

126.    Because of the foregoing, Ms. Johnson has lost a part of her self-respect, her self-confidence and her feeling of self-worth.

## CLAIMS OF UNLAWFUL DISCRIMINATION

## COUNT I

**Discrimination in Violation of 42 U.S.C. § 2000e (Title VII of the Civil Rights Act of 1964 as amended) and  I.C. §§ 67-5901 and 67-5909 (1) Against Defendants St. Luke's Regional Medical Center**
**(Unlawful Disparate Treatment Race)**

127.    Plaintiff restates, incorporates and re-alleges paragraphs 1 through 126 of this Count I as paragraph 127.

128.    By virtue of the foregoing, the Defendant by and through its agents but primarily through  Mr. Brian Dotter  caused Ms. Johnson, an African-American to suffer as a victim of deliberate and unlawful discrimination due to her race in violation 42 U.S.C. § 2000e  (Title VII of the Civil Rights Act of 1964 as amended) and I.C. §§ 67-5901 and 67-5909(1).

## COUNT II

**Discrimination in Violation of 42 U.S.C. § 2000e (Title VII of the Civil Rights Act of 1964 as amended) and  I.C. §§ 67-5901 and 67-5909 (1) Against Defendants St. Luke's Regional Medical Center**
**(Unlawful Disparate Treatment Gender)**

129.    Plaintiff restates, incorporates and re-alleges paragraphs 1 through 128 of this Count II as paragraph 129.

COMPLAINT AND DEMAND FOR JURY TRIAL                                    Page 17 of 21

130.     By virtue of the foregoing, Defendant, by and through its agents but primarily through Mr. Brian Dotter  caused Ms. Johnson to suffer as a victim of deliberate and unlawful discrimination due to her gender in violation of  42 U.S.C. § 2000e  (Title VII of the Civil Rights Act of 1964 as amended) and I.C. §§ 67-5901 and 67-5909(1).

## COUNT III

### Discrimination in Violation of 42 U.S.C. § 2000e (Title VII of the Civil Rights Act of 1964 as amended) and  I.C. §§ 67-5901 and 67-5909 (1) Against Defendants St. Luke's Regional Medical Center
### (Hostile Work Environment Race)

131.     Plaintiff restates, incorporates and re-alleges paragraphs 1 through 130 of this Count III as paragraph 131.

132.     By virtue of the foregoing, Defendant, through its agents but primarily through Mr. Brian Dotter, created an environment that was sufficiently severe as to alter the conditions of Complainant's working environment which caused Complainant, an African-American to be subjected to a hostile work environment in violation 42 U.S.C. § 2000e  (Title VII of the Civil Rights Act of 1964 as amended) and I.C. §§ 67-5901 and 67-5909(1).

133.     As a result of this violation, Ms. Johnson, an African-American, suffered humiliation, degradation, severe emotional distress and other damages delineated herein.

## COUNT IV

### Discrimination in Violation of 42 U.S.C. § 2000e (Title VII of the Civil Rights Act of 1964 as amended) and  I.C. §§ 67-5901 and 67-5909 (1) Against Defendants St. Luke's Regional Medical Center
### (Hostile Work Environment Gender)

134.     Plaintiff restates, incorporates and re-alleges paragraphs 1 through 133 of this Count IV as paragraph 134.

COMPLAINT AND DEMAND FOR JURY TRIAL                                  Page 18 of 21

135.     By virtue of the foregoing, Defendant, through its agents but primarily through

Mr. Brian Dotter, created an environment that was sufficiently severe as to alter the conditions of

Plaintiff's working environment because of her gender which caused Plaintiff to be subjected to

a hostile work environment in violation of  42 U.S.C. § 2000e  (Title VII of the Civil Rights Act

of 1964 as amended) and I.C. §§ 67-5901 and 67-5909(1).

136.     As a result of this violation, Ms. Johnson, a woman, suffered humiliation,

degradation, severe emotional distress and other damages delineated herein.

## COUNT V

**Discrimination in Violation of 42 U.S.C. § 2000e (Title VII of the Civil Rights Act of 1964 as
amended) and  I.C. §§ 67-5901 and 67-5909 (1) Against Defendants St. Luke's Regional
Medical Center
(Wrongful Termination Race)**

137.     Plaintiff restates, incorporates and re-alleges paragraphs 1 through 136 of this

Count V as paragraph 137.

138.     By virtue of the foregoing, Defendant, by and through its agent Mr. Brian Dotter

caused Ms. Johnson to suffer as a victim of deliberate and unlawful discrimination due to her

race in violation of  42 U.S.C. § 2000e  (Title VII of the Civil Rights Act of 1964 as amended)

and I.C. §§ 67-5901 and 67-5909(1).

139.     As a result of this violation, Ms. Johnson, an African American, suffered the

adverse employment action of being deliberately denied an opportunity to serve Defendant as a

Pharmacist because she was unlawfully terminated from her position because of her race.

## COUNT VI

**Discrimination in Violation of 42 U.S.C. § 2000e (Title VII of the Civil Rights Act of 1964 as
amended) and  I.C. §§ 67-5901 and 67-5909 (1) Against Defendants St. Luke's Regional
Medical Center**

COMPLAINT AND DEMAND FOR JURY TRIAL                                     Page 19 of 21

**(Wrongful Termination Gender)**

140.    Plaintiff restates, incorporates and re-alleges paragraphs 1 through 139 of this Count VI as paragraph 140.

141.    By virtue of the foregoing, Defendant, by and through its agent Mr. Brian Dotter caused Ms. Johnson to suffer as a victim of deliberate and unlawful discrimination due to her gender in violation of  42 U.S.C. § 2000e  (Title VII of the Civil Rights Act of 1964 as amended) and I.C. §§ 67-5901 and 67-5909(1).

## COUNT VII

### Negligent Infliction of Emotional Distress

142.    Plaintiff restates, realleges, and reavers and hereby incorporates by reference the allegations set forth in paragraphs 1 through 141 herein as paragraph 142 of Count VII.

143.    That it was clearly foreseeable that the manner in which Defendant treated Plaintiff during her employment and subsequent termination would cause Plaintiff mental and emotional distress which would result in physical manifestations detrimental to Plaintiff's health.

144.    That Defendant's actions caused Plaintiff to suffer emotional and physical distress, and that due to Defendant's conduct, Plaintiff has suffered from humiliation, loss of confidence, loss of self-respect and self-worth, profound stress and anxiety, depression, anger, frustration, and hopelessness.

### VIII. PRAYER FOR RELIEF

WHEREFORE, Plaintiff, Jessica M. Allan, respectfully prays for judgment against Defendant as follows:

A.  For a money judgment representing compensatory damages in the amount of no more than three-hundred thousand dollars ($300,000.00);

COMPLAINT AND DEMAND FOR JURY TRIAL                              Page 20 of 21

B.  For reinstatement or front pay in lieu of reinstatement if reinstatement is not viable[2] in an amount to be determined at trial;.

C.  For a money judgment representing punitive damages for Defendant's reckless indifference to the federally protected rights of Plaintiff in an amount to be determined at trial;

D.  For a money judgment representing prejudgment interest, if applicable;

E.  For attorney's fees and costs incurred by Plaintiff in bringing and prosecuting this cause of action; and

F.  For such other and further relief as may be just and proper.

## IX. DEMAND FOR A TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury in this action.

Respectfully submitted,

PLAINTIFF
By Plaintiff's Attorneys

Idaho Employment Law Solutions, PLLC

R.A. (RON) COULTER

---

[2] *See Pollard v. E.I. du Pont de Nemours & Company*, 532 U.S. 843, 121 S.Ct. 1946 (2001).

COMPLAINT AND DEMAND FOR JURY TRIAL                                    Page 21 of 21